(525) On the trial at Craven, on the last circuit, before his Honor, Judge Settle, the plaintiff introduced a witness who stated that he was the agent of Isaac W. Hughes, and purchased of the defendant the timber in question, and that while he was settling for it the plaintiff came with his hands for the timber, when the witness informed him that he had bought it of the defendant, and was to give him thirty-one dollars per ton for the same; and in the course of the conversation the defendant, who was present, admitted that he had sold the timber to the plaintiff and that the plaintiff had agreed to give him thirty dollars per ton for it and offered to pay the plaintiff the difference between the sum agreed to be paid by the plaintiff and the sum for which he sold the timber to the witness. It was proved further that the plaintiff had not paid anything to the defendant and that the timber was taken by the *Page 413 
witness for his principal, and used by him; and further, that if the plaintiff had obtained the timber and sawed it up he might have realized between forty-five and fifty dollars. On the part of the defendant it was proved that before he sold to Hughes he was informed that the plaintiff was insolvent, and that he would "stand a bad chance in getting his money"; and that he then immediately sold to Hughes. It was also proved for the defendant that the plaintiff, at the time of the alleged contract, was in fact insolvent; that the timber had never been out of his, defendant's, possession, but was at the public wharf, and not at the plaintiff's mills, where it was usual to deliver it by persons selling him timber; that the timber had not been measured or taken an account of by the plaintiff, and there was no evidence on the part of the plaintiff to show an offer by him to pay, or his ability to pay, for the timber, but on the contrary it was proved that he was unable to pay.
His Honor charged the jury that if they believed from the evidence that the contract, as alleged by the plaintiff, had been made by him and the defendant, the plaintiff was entitled to recover damages commensurate with the injury which he had sustained; but if they should collect from the testimony that there was only a conversation and chaffering in relation to a contract which the parties did not complete then the title to the timber did not vest in the plaintiff and he would not be entitled to recover. The defendant had a verdict and judgment and the plaintiff appealed.
We are not prepared to say that the contract as laid in the (526) declaration, or as it might be collected from the testimony, would authorize a recovery in this action, even if the contract had been definitely concluded. The declaration is for an injury to the plaintiff's right of property, and supposes, therefore, that the contract vested the right of property, if not the right of possession, in the plaintiff. That cannot be so, if the agreement was merely executory, but the action ought to have been assumpsit for the breach of the agreement. But we are not obliged to determine how that would be, since the jury have found that the parties made no contract. That puts an end to the plaintiff's demand in any form of action, provided the judge did not submit that inquiry to the jury without any evidence that could authorize a response in the negative. In our opinion there was not only evidence proper to be left to the jury on the point, but such as might well warrant their verdict as given. The question is, whether the parties considered they had conclusively bargained so as to change the property. *Page 414 
Now, a man from the county arrives in town with a parcel of timber in the river for sale, and is met by a dealer in the streets, who inquires of the owner his price and says he will give it. But he does not give it, and on the contrary goes off without taking any account of the article, neither inspecting nor measuring it, nor telling the other where to carry it for measurement and delivery, and above all, not paying for it nor offering at any time to make payment. What could the countryman think, under such circumstances but that the stranger meant to practice on him either a jest or a fraud? What must anyone think of it, even when subsequently considering it with deliberation? It seems to us that the parties must have conversed upon the tacit understanding that the timber was to be measured and received immediately and paid for on the spot; and that, without the cash, it was no bargain. Therefore, when the pretended buyer went away and staid, it does not appear how long, but long enough for the other party to find out that he was insolvent and could not pay for the timber, and to make a sale to another person, what could the jury reasonably infer but that the transaction had (527) begun and ended in mere talk, without anything serious being finally concluded on; or if it had, that it was immediately abandoned? Against this there is nothing to militate, but that, "in the course of the conversation" afterwards, the defendant said he had sold to the plaintiff and offered to pay him the difference. But the offer may have justly been regarded as one of compromise or as having been prompted by a disposition of the defendant to satisfy the plaintiff that he had not been actuated by the difference in price. As to the observation that he had sold to the plaintiff it might have been meant, and, as things stood, probably was meant, for no more than that he had agreed to sell. That was true enough, but the agreement, from its nature, might be deemed, and was deemed by the jury to have been conditional, and therefore not binding on the defendant after seeing the conduct of the plaintiff. Upon the whole we think his Honor fairly left the question to the jury, and therefore that the judgment must be affirmed.
PER CURIAM. Judgment affirmed.